Filed 6/18/15  P. v. Mata CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARK ANTHONY MATA,<br><br>    Defendant and Appellant. | F066531<br><br>(Super. Ct. Nos. VCF245876, VCF258951, VCF271541)<br><br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Joseph A. Kalashian, Judge.

Peter J. Boldin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Jennifer M. Poe, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P.J., Poochigian, J. and Peña, J.

## INTRODUCTION

A jury convicted appellant Mark Anthony Mata of felony driving under the influence, felony driving with a blood alcohol concentration of .08 or higher, and misdemeanor driving on a suspended license. He was arrested following a minor vehicle accident. Appellant was with his brother, David Mata, in David's BMW when the accident occurred. At trial appellant argued the state failed to prove he was the driver.

On appeal appellant raises four arguments. First, he contends the trial court violated his constitutional rights when it refused to instruct the jury regarding David's failure to testify after David invoked his Fifth Amendment privilege against self-incrimination outside the jury's presence.

Second, he asserts the trial court abused its discretion when it denied a motion for new trial based on newly discovered evidence after David provided an unsworn letter indicating he drove the BMW on the night in question and appellant was a passenger.

Third, he argues his trial counsel rendered prejudicially ineffective assistance because the defense moved an unredacted arrest report into evidence which mentioned appellant's five previous DUI arrests. During deliberations, the jury sent a note to the judge asking if it could use the five previous DUI arrests as evidence. The court instructed the jury it could not do so.

Finally, he maintains the cumulative effect of the trial errors violated his right to due process.

Based on the record, we find no prejudice stemming from defense counsel's actions and we determine appellant's remaining contentions are unpersuasive. However, a clerical mistake appears in the amended abstract of judgment, which we will order corrected on our own motion. We otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant does not challenge the sufficiency of the evidence supporting his convictions. Set forth below are a summary of the trial facts taken in the light most favorable to the judgment and relevant to the issues on appeal.

### I. Trial Evidence.

#### A. The accident.

On August 5, 2012, a car accident occurred in the City of Visalia on Goshen Avenue at approximately 11:30 p.m. Stephanie Saesee's vehicle was struck by a dark colored BMW. Saesee immediately stopped and two men exited the BMW, but she did not see which one had been driving. One of the men wore a white shirt and the other wore an orange shirt. Saesee waited in her vehicle and observed the men "running back and forth."

Before the police arrived on scene, another vehicle drove up and a lady exited. The man wearing white entered this new vehicle, which drove away. Both the lady and the man in orange remained standing near Saesee's vehicle.

#### B. The eyewitness.

On August 5, 2012, David Martin was in his employer's parking lot when he heard a car accident. A black vehicle came to a skidding stop in front of his place of work. Martin immediately went to observe and saw two men exit the black vehicle. One was wearing an orange or red shirt, and the other wore a white tank top. Martin identified the driver as the man wearing the white top.

The man in orange yelled at Martin to contact law enforcement, which Martin did. However, the man wearing white then told him to not do so, and the man in orange agreed and told Martin to not contact them. Martin stayed on the telephone with 911 and observed the two men running back and forth from their vehicle to a tree emptying beer bottles. He saw the two men call someone, and then a short time later a dark colored

3.

SUV arrived. A lady exited the SUV and the driver, the man wearing the white shirt, jumped into the passenger side of the SUV and it drove away.

Officers from the Visalia Police Department arrived and took Martin's statement. Martin did not see the faces of the two men and he could only identify them based on their clothing. While speaking with an officer, the man in the white shirt returned to the area walking on foot. Martin was positive it was the same man who drove the BMW and left in the SUV. The man returned about 30 minutes after he left.

### C. Officers' testimony.

#### 1. Officer Norman.

Visalia Police Department Officer Amerie Norman was dispatched to the accident scene. Norman made contact with a male and a female who were standing in front of the BMW but closer to Saesee's vehicle. The male was appellant's brother, David Mata, and the female was appellant's mother. David was wearing an orange T-shirt, and he appeared intoxicated due to red, watery eyes, a strong odor of alcohol emitting from his person, and slurred speech.

Norman asked David who was driving, and he pointed to his mother. Appellant's mother informed Norman that she was the driver. Officer Dewitt arrived on the scene and Norman asked him to interview appellant's mother further while Norman interviewed Martin. While interviewing Martin, appellant returned to the scene walking on foot with his girlfriend. Appellant was wearing a white tank top and blue jeans, and he returned about 15 minutes after Norman arrived at the scene. Martin informed Norman that appellant was the person who had exited the driver's seat of the BMW.

Norman interviewed appellant, who appeared intoxicated due to a very strong odor of alcohol emitting from his person, red watery eyes, and slurred speech. Norman asked appellant for his name, which appellant gave. After giving his name, appellant stated, "I was the driver. I was driving that car." Appellant made his admission voluntarily and

without any prompting.  Norman arrested appellant for driving under the influence and for leaving the scene of the accident.

After he was placed in a patrol vehicle and read his *Miranda*[1] rights, appellant stated he was not driving.  Norman described appellant's demeanor as very "nonchalant" when appellant was first contacted and admitted to driving.  Appellant's demeanor changed after he was arrested, becoming very agitated and upset.

### 2.     Officer Dewitt.

Visalia Police Department Officer Jason Dewitt was dispatched to the accident scene and he met with Lisa Pacheco, appellant's mother.[2]  Dewitt spoke with Pacheco in English, and believed she spoke enough English to communicate effectively.  He said she understood every question he asked and agreed that she answered everything clearly and concisely.

Pacheco said she was the driver of the BMW, which Dewitt did not believe because she could not provide any factual details regarding the accident.  Pacheco stated appellant was the driver after Dewitt advised her that he did not believe her and informed her of the ramifications of lying to a police officer during an investigation.  She identified appellant using his full name, including middle name, and she gave his date of birth.  When asked why she allowed her son to leave the scene of the accident, Pacheco stated she did not want appellant to get into trouble.  She contacted appellant on her cell phone, asking him to return to the scene, which he did.

Dewitt discovered several beer bottles near a tree.  They were still full of liquid.  A floor mat from the BMW was also lying there, along with some baby wipes and a white T-shirt.

---

[1]     *Miranda v. Arizona* (1966) 384 U.S. 436.

[2]     In the record, Pacheco is sometimes referred to as Lisa Angeles.

### D.  Toxicology.

Appellant's blood was drawn by a phlebotomist later that same night at approximately 1:10 a.m.  Appellant's blood was later tested by a toxicologist, which showed a blood alcohol concentration of .16 percent.  The toxicologist opined that appellant was too intoxicated to safely operate a motor vehicle.

### E.  Appellant's mother.

Pacheco said she understands English "a little bit" but not well enough to speak in court.  Appellant, who is her son, was at her house on the night of the accident.  She saw appellant leave with her other son, David.  Appellant wore a "red and blue" sweater with "blue or green stripes."  Later that night appellant telephoned her and said they had an accident.  Appellant asked her to drive to the scene, which she did along with appellant's girlfriend.

At the accident scene, she testified appellant told her David had been driving.  On direct, she said that appellant left with his girlfriend in the SUV in order to tell Pacheco's husband where she was because Pacheco left without saying anything.  On cross-examination, she testified appellant did not leave the scene but "went a little bit further ahead" to urinate.  When asked about her testimony regarding appellant leaving with his girlfriend in the SUV, Pacheco testified that appellant came back immediately and he was already walking back when she called him.

Pacheco told the police officer that she had been driving because David asked her to do so.  She became scared once the officer said they knew the truth.  She testified initially that she did not tell Dewitt anything when he asked her if appellant was the driver.  However, she later claimed the officer never asked her who was driving.

### F.  Defense evidence.

#### 1.  Maira Vasquez.

Maira Vasquez, a friend of Pacheco's, was at Pacheco's house at approximately 10:30 p.m. on the night of the accident.  Everyone was drinking.  Appellant wore a long-

6.

sleeved red shirt with stripes.  David wore an orange-colored shirt.  She observed appellant and David leave the party.  David got into the driver's seat and appellant got into the passenger seat.  She did not see them change their shirts before leaving.

### 2.	Benito Garcia.

Benito Garcia was at Pacheco's house on the night of the accident.  Appellant wore a red sweater with blue stripes.  David wore an orange shirt.  He saw appellant and David leave the party around 11:00 or 11:30 p.m.  David got into the driver's seat and appellant was the passenger.

### 3.	Mabely Ramirez.

Mabely Ramirez, appellant's girlfriend, was at Pacheco's house on the night of the accident.  Everyone had been drinking during a barbecue, which started around 2:00 or 3:00 p.m.  People started drinking around 5:30 p.m. or so after the meal.  Appellant wore a long-sleeved red shirt with dark blue stripes and David wore an orange shirt. She did not see either of them change shirts.  She observed them leave the party, with David getting in the driver's side and appellant getting into the passenger side.  She heard David say he wanted to drive because it was his new car.  She testified that she did not want them to leave because they were not okay to drive.

About five minutes later, Ramirez received a telephone call from appellant saying an accident occurred.  She drove to the scene with appellant's mother, which took about five minutes.  At the accident scene, she noticed neither appellant nor David were wearing their shirts.  She indicated both were bare chested.

She left with appellant and drove back to Pacheco's house to tell Pacheco's husband what happened.  Pacheco's husband drove them back to the accident scene, dropping them off at an unknown distance from the scene so they walked.  She testified appellant did not want to leave the accident scene but his mother agreed to take the blame for the accident.  She overheard David tell his mother to take the blame.  She denied that appellant left the accident scene to avoid getting into trouble.

7.

## II.    Information and Sentencing.

### A.    Information.

The District Attorney of Tulare County filed an information charging appellant with driving under the influence of alcohol (Veh. Code, § 23152, subd. (a); count 1); driving while having a .08 percent or higher blood alcohol concentration (§ 23152, subd. (b); count 2); leaving the scene of an accident (§ 20001, subd. (a); count 3); and misdemeanor driving on a suspended license from a prior conviction (§ 14601.2, subd. (a); count 4).

As to counts 1 and 2, it was further alleged appellant had suffered five prior DUI convictions (Veh. Code, §§ 23550, 23550.5) and his concentration of blood alcohol was .15 percent by weight or more (Veh. Code, § 23578).  As to counts 1 through 3, it was further alleged appellant had suffered four previous felony convictions (Pen. Code, § 667.5, subd. (b)).

### B.    Verdicts and sentencing.

The jury found appellant guilty on counts 1 and 2.  Count 4 was bifurcated and appellant entered a plea of guilty.  The trial court dismissed count 3.  Following the jury trial, the court found the prior convictions to be true.

For count 2, appellant was sentenced to eight months in state prison to be served consecutive to his sentence in Tulare County Superior Court case No. VCF245876.[3]  For count 1, appellant was sentenced to state prison for two years, which was stayed pursuant to Penal Code section 654.[4]  For count 4, appellant was sentenced to 185 days in custody,

---

[3]    In Tulare County Superior Court case No. VCF245876 (violation of probation), appellant was sentenced to an aggregate term of four years in state prison.  In Tulare County Superior Court case No. VCF258951 (violation of probation), appellant was sentenced to two years in state prison to be served concurrently to case VCF245876. These companion cases were consolidated with the present appeal.

[4]    The court's oral pronouncement of judgment transposed the sentence for counts 1 and 2.  It appears the court intended to sentence appellant in accordance with the probation officer's recommendation, which was reflected in the abstract of judgment.

which was deemed already served. Including the companion cases, appellant received a total aggregate sentence of four years eight months in state prison.

## DISCUSSION

**I.     The Trial Court did not Err when it Refused to Instruct the Jury with CALJIC No. 2.25 or Similar Language.**

Appellant contends the trial court erred when it refused to instruct the jury using CALJIC No. 2.25, or similar language, after David invoked his Fifth Amendment privilege against self-incrimination. Although the jury did not see or learn that David invoked his Fifth Amendment privilege, the jury saw that David was called to the witness stand and then the trial resumed without his involvement or an explanation of his absence. Appellant maintains that the trial court's error was prejudicial and requires reversal.

### A.     Background.

Prior to the defense starting its case, and outside the presence of the jury, the court asked if appellant's brother was going to testify in the matter. David's attorney indicated that it was still "undecided" at that time. At the next court appearance two days later, also outside the presence of the jury, David's attorney announced that David had decided to testify. The defense started its case-in-chief, and called Vasquez and Garcia to testify.

At the conclusion of Garcia's testimony, appellant's counsel called David to testify. The court immediately excused the jury, indicating it had to resolve a legal issue before taking the next witness. Outside the presence of the jury, David's attorney indicated David was "really unsure" about testifying and asked David if he wished to invoke his Fifth Amendment rights. David indicated that he wanted to invoke those rights and David's attorney confirmed to the court that David would not testify. The following exchange took place:

> "THE COURT: Okay. That's it. Thank you. [¶] Who is your next witness?

9.

"[DEFENSE COUNSEL]:  I don't have any further witnesses.  I'm assuming that -- I'm sorry.  We have one more witness.  But are we going to at this time inform the jury of [David's] refusal --

"THE COURT:  It's not relevant.

"[DEFENSE COUNSEL]:  It is.  It's a fact.

"THE COURT:  It's not a fact.

"[DEFENSE COUNSEL]:  The fact that he didn't testify.  They have a right to know that I attempted to call him and he invoked.

"THE COURT:  No, that's not evidence.  Because if I told them that, then I would have to tell them in the very next sentence you're not to consider that for any reason whatsoever.

"[DEFENSE COUNSEL]:  And that is actually a jury instruction that I'm asking for.

"THE COURT:  It's not evidence."

The jury was then called back into the courtroom and the defense called its last witness, Ramirez.  After the jury retired to deliberate, and outside the presence of the jury, defense counsel noted for the record it had requested a jury instruction regarding David's refusal to testify.  He stated he called David while the jury was present so he believed it was proper for the court to instruct the jury.  The court confirmed that the defense had submitted CALJIC No. 2.25 and stated it denied the request because the exercise of the constitutional privilege occurred outside the jury's presence.  The court also commented that the jury had not seen the earlier discussions with David's counsel about whether David would testify or not.

## B.    Standard of review.

Evidence Code section 913 provides that if a privilege is exercised not to testify, "no presumption shall arise" (*id.,* subd. (a)) because of that exercise and no inference may be drawn from that exercise regarding the witness's credibility "or as to any matter at issue in the proceeding" (*id.,* subd. (b)).

10.

Evidence Code section 913 "neither envisions nor specifies that the privilege be invoked in the presence of the jury." (*People v. Johnson* (1974) 39 Cal.App.3d 749, 759.) Our Supreme Court has noted it is better for a trial court to require the exercise of a privilege outside the jury's presence. (*People v. Frierson* (1991) 53 Cal.3d 730, 743.) This avoids any potentially prejudicial impact because allowing a witness to take the stand to exercise a privilege before the jury only invites the jury to make improper inferences. (*Ibid.*)

CALJIC No. 2.25 states: "When a witness refuses to testify to any matter, relying on the constitutional privilege against self-incrimination, you must not draw from the exercise of this privilege any inference as to the believability of the witness [or] [whether the defendant is guilty or not guilty] [or] [any other matter at issue in this trial.]"[5]

On appeal, we review de novo the trial court's actions regarding jury instructions. (*People v. Waidla* (2000) 22 Cal.4th 690, 733.)

### C. Discussion.

Our Supreme Court has analyzed and rejected the same arguments which appellant raises here. In *People v. Richardson* (2008) 43 Cal.4th 959 (*Richardson*) the defendant was convicted of murder and sentenced to death. The defense had attempted to compel the testimony of Steven Brown, who was in custody for the same murder. The defense argued that Brown alone committed the crime. (*Id.* at p. 971.) Outside the presence of the jury, Brown invoked his Fifth Amendment privilege against self-incrimination. (*Id.* at p. 1009.) Defense counsel asked the trial court to instruct the jury that it was prevented from calling Brown because he asserted the privilege. (*Id.* at p. 1010.) The trial court

---

**5** CALJIC No. 2.25 (Spring 2015 ed.) is titled: "Refusal Of Witness To Testify— Exercise Of Privilege Against Self-Incrimination." For some unknown reason, appellant incorrectly states this is titled: "Cautionary Instruction When Witness Exercises Privilege Outside of the Presence of the Jury."

11.

declined to do so after the prosecution argued such an instruction was precluded by Evidence Code section 913.

On appeal, the *Richardson* court approved the practice of having Brown exercise his privilege outside the jury's presence. *Richardson* noted the trial court's approach avoided prejudicial impact. (*Richardson, supra,* 43 Cal.4th at p. 1011.) The Supreme Court also found no error in the failure to instruct the jury that Brown did not testify because of his assertion of the Fifth Amendment. (*Ibid.*) To the contrary, giving such an instruction "may have invited the jury to infer that Brown had invoked the privilege because he was guilty of the offense." (*Id.* at pp. 1011-1012.) *Richardson* held that such an inference was impermissible. (*Id.* at p. 1012.)

Here, the present matter is not factually distinguishable from *Richardson*, which controls. As such, the trial court properly refused to instruct the jury regarding David's failure to testify. Such an instruction may have invited the jury to infer David invoked the privilege because he was guilty of the offense. Such an inference is impermissible. The trial court did not err. (*Richardson, supra,* 43 Cal.4th at pp. 1011-1012.)

Appellant cites *Bowles v. United States.* (D.C. Cir. 1970) 439 F.2d 536 (*Bowles*), a case which does not assist him. In *Bowles*, the trial judge refused to permit the defendant to call a witness to the stand. Outside the jury's presence the trial court determined the witness would refuse to answer questions under the Fifth Amendment. The defense argued the jury should be informed the witness invoked his privilege and it requested "a missing witness" instruction. (*Id.* at p. 541.) The trial court declined to so instruct the jury and ordered counsel to not mention the witness's invocation of the Fifth Amendment. (*Ibid*.)

On appeal, the *Bowles* court approved of the trial court's actions, noting the jury might draw inferences from the witness's invocation of the privilege. *Bowles* stated that "[t]he jury may think it high courtroom drama of probative significance when a witness 'takes the Fifth.' In reality the probative value of the event is almost entirely undercut by

12.

the absence of any requirement that the witness justify his fear of incrimination and by the fact that it is a form of evidence not subject to cross-examination." (*Bowles, supra,* 439 F.2d at pp. 541-542.) *Bowles* also determined the jury should not be informed that a witness has exercised his constitutional privilege because that is a fact which the jury is not entitled to rely upon in reaching its verdict. (*Id.* at p. 542.) *Bowles*, however, in dicta, noted the trial judge could have properly given a neutralizing instruction to reduce any inferences the jury might have drawn from the witness's absence. *Bowles* stated it would have been error for the trial court to refuse such an instruction but no error was present because counsel did not make such a request. (*Ibid.*)

Here, *Bowles* was similar to *Richardson* in its reasoning. As in *Richardson*, *Bowles* noted the dangers associated with a jury learning a witness has invoked the Fifth Amendment privilege. The dicta in *Bowles* regarding a possible neutralizing instruction for a witness's absence is neither binding on this court nor sufficient to overcome the holding of *Richardson*. *Bowles* does not establish error.

Under *Richardson*, the trial court did not err when it refused to instruct the jury with CALJIC No. 2.25 or similar language. Appellant is not entitled to reversal.[6]

## II. The Trial Court did not Abuse its Discretion Regarding the Motion for New Trial.

Appellant argues the trial court erred and violated his various constitutional rights when it denied his motion for a new trial based on newly discovered evidence.

### A. Background.

Following his convictions, appellant filed a motion for new trial pursuant to Penal Code section 1181. Attached to the motion was a notarized but unsworn letter signed by David which stated the following:

---

[6] Because appellant cannot establish error, we will not address his contentions that any error was prejudicial. !(AOB 32-36)!

"My name is David Mata, I was the driver of the Black 2003 BMW that was involved in an accident on Goshen Ave on Aug. 5, 2012 approx [*sic*] at 11:30 pm. The vehicle was occupied by myself as the driver and my brother Mark Mata as the passenger.

"At the time I did not want to take full responsibility because I've been trying to get my license back and I knew if I said I was the driver it would affect me.

"Now looking at the whole situation I'm taking the full responsibility, I was the driver and I'm making this statement because it is the right thing to do! My brother Mark was the passenger, he was not driving the vehicle during the time of this accident he is innocent."

The prosecution filed an opposition. After hearing argument, the trial court made the following comments:

"… I vividly recall the testimony at the trial. And it was after hearing all the testimony that it was my distinct impression that the Mata family did just about everything they could to protect the defendant in this case after charges were filed, and even during the time of the accident. We have a reporting party, a noninterested reporting party, who the description he gave is the person who was driving the vehicle matched the description of Mr. Mata, not his brother.

"Mr. Mata's mother came in. According to Officer Dewitt, the mother at the time said the defendant was driving and then changed that testimony and testified differently at trial.

"This motion for new trial, in the Court's opinion, is nothing more than a family trying to get a second bite at the apple, so to speak. They tried the case first without the brother testifying. That didn't work. So now they come in a second time and say well, wait a minute, now the brother will testify, so we should get a second try at a trial. And that isn't going to go by this judge. I'm not buying that for a second."

Appellant's counsel argued misidentification occurred because appellant and David look so much alike as to height, build and color, and it was very dark when the accident occurred. The following exchange took place:

"THE COURT: We have conflicting and impeachable testimony by the mother as to what she initially testified -- initially told the officer versus

14.

what she said here at trial. As I recall, she told the officer at the time that the son was driving.

"[DEFENSE COUNSEL]: Again, we think the inverse conclusion could be drawn that she was attempting to protect the other son, not necessarily my client.

"THE COURT: As I said, I've stated my reasons. So the motion for new trial is denied."

## B. Standard of review.

The law looks with disfavor upon a motion for new trial based on newly discovered evidence because the litigation must end at some point. (*People v. Williams* (1962) 57 Cal.2d 263, 274.) On appeal, a deferential "'abuse-of-discretion standard'" is used to review a trial court's ruling on a motion for a new trial. (*People v. Thompson* (2010) 49 Cal.4th 79, 140.) The ruling will not be reversed "'"absent a manifest and unmistakable"'" abuse by the trial court. (*Ibid.*) The trial court retains complete discretion when ruling on such a motion. (*Ibid.*)

The defendant has the burden on such a motion to establish it is "probable that at least one juror would have voted to find him not guilty had the new evidence been presented." (*People v. Soojian* (2010) 190 Cal.App.4th 491, 521.)

## C. Analysis.

Appellant contends David's notarized letter meets the Supreme Court's five requirements for the granting of such a motion on newly discovered evidence. Respondent disagrees, arguing the trial court had the discretion to find David's letter not credible and cumulative to the trial evidence.

Penal Code section 1181, subdivision 8, permits a trial court to grant a new trial for newly discovered evidence that is material to the defendant, and which could not have been discovered and produced at trial with reasonable diligence. The Supreme Court has set forth the following five factors for a trial court to consider: (1) whether the evidence, and not just its materiality, is newly discovered; (2) whether the evidence is cumulative;

15.

(3) whether the evidence will render a different result probable on retrial; (4) whether the party could not have discovered and produced the evidence at trial with reasonable diligence; and (5) whether the facts are shown by the best evidence. (*People v. Delgado* (1993) 5 Cal.4th 312, 328 (*Delgado*).)

A trial court should grant a motion for new trial when the newly discovered evidence contradicts the strongest evidence introduced against the defendant. (*Delgado, supra,* 5 Cal.4th at p. 329.) However, a trial court is permitted to consider the credibility and the materiality of the new evidence when determining whether its introduction in a new trial would render a different result reasonably probable. (*Ibid.*)

*Delgado, supra,* 5 Cal.4th 312, is instructive regarding the deference given to the trial court in weighing the credibility and impact of the newly offered evidence against the evidence produced at trial. In *Delgado*, the defendant was convicted of second degree murder and misdemeanor child abuse stemming from the death of his girlfriend's minor daughter and injuries to her minor son. The girlfriend gave conflicting accounts to the police regarding what happened on the night in question, and her conflicting statements continued in her testimony at the preliminary hearing, at trial, and ultimately in a declaration she submitted at the hearing for the defendant's motion for new trial. (*Id.* at p. 316.) Her initial accounts to police indicated she had no involvement in her children's injuries, but her subsequent accounts tended to implicate either herself or her estranged husband, and exculpate the defendant. In her declaration for a new trial, the girlfriend indicated she had beaten her daughter severely and injured her son, and indicated the defendant was not involved. (*Id.* at p. 324.)

In addition to the girlfriend's declaration, the defense produced the girlfriend's therapist and her estranged husband to testify at the hearing. According to the therapist, she had a conversation with the girlfriend in which the girlfriend said she injured her daughter on the night in question. According to the estranged husband, the girlfriend confided to him that she was responsible for their daughter's death, but on cross-

16.

examination he could not remember much detail regarding how she accomplished the killing. (*Delgado, supra,* 5 Cal.4th at pp. 324-325.) The defense also submitted a declaration from a friend of the girlfriend, who indicated the girlfriend confessed and stated the defendant was not involved on the night in question. Despite this new evidence, the trial court denied the motion for new trial, finding the girlfriend not credible. The trial court noted it was convinced of the defendant's guilt beyond a reasonable doubt based on the trial evidence and found that the new evidence would not alter the outcome. (*Id.* at pp. 325-326.)

The Court of Appeal reversed, but the Supreme Court affirmed the trial court's ruling, determining the girlfriend's detailed confession failed to significantly contradict or diminish the probative value of her earlier testimony regarding the defendant's guilt. More importantly, *Delgado* noted the girlfriend's confession failed to diminish the strength of much more damaging testimony against the defendant, including the minor son identifying the defendant as the assailant. (*Delgado, supra,* 5 Cal.4th at pp. 328-329.) The Supreme Court found no abuse of discretion because the girlfriend's declaration was not credible in light of her earlier statements, certain evidence introduced at trial, and her obvious continued attachment to the defendant. (*Id.* at p. 329.) *Delgado* affirmed the trial court's decision, holding the judge was "well within his discretion in finding that the proffered new testimony lacked credibility, and implicitly finding that it would not have changed the result on retrial." (*Ibid.*)

Here, like in *Delgado*, the trial court focused on the credibility of David's letter and based its denial on that factor. The trial judge noted that appellant's family had done "everything they could to protect" appellant but a noninterested witness had identified appellant as the driver. The trial judge also recalled appellant's mother stating at the accident scene that appellant was the driver. The trial judge believed appellant's family was trying to get "a second bite at the apple" after the first trial went against appellant.

The record supports the trial court's determination that David's letter lacked sufficient credibility to warrant a new trial. In addition to the points noted by the trial judge, we further observe David indicated at the accident scene his mother was the driver. These inconsistencies, coupled with David's obvious ongoing attachment to appellant, call into question the veracity of David's unsworn letter.

Moreover, we disagree with appellant's contention that David's letter overcomes the strongest evidence against him at trial, which he asserts was Martin's eyewitness identification. To the contrary, the strongest evidence against appellant was his voluntary admission made at the accident scene without any prompting. David's unsworn letter does not overcome that evidence. When appellant's admission is coupled with the eyewitness identification and his mother's statement to law enforcement, overwhelming evidence exists that appellant was the driver.

The trial court acted well within its discretion in finding that David's letter lacked credibility. (*Delgado, supra,* 5 Cal.4th at p. 329.) Based on this record, the trial court also acted well within its discretion in implicitly finding it was not probable that at least one juror would have voted to find appellant not guilty had David's information been presented. (*People v. Soojian, supra,* 190 Cal.App.4th at p. 521.) Accordingly, appellant is not entitled to reversal of his convictions.

## III. Appellant Cannot Establish Prejudice Stemming From His Counsel's Performance.

Appellant asserts his trial counsel rendered constitutionally ineffective assistance of counsel. He contends he was denied a fair trial and his convictions must be reversed.

### A. Background.

Following appellant's arrest, Officer Norman prepared a "DRIVING UNDER THE INFLUENCE (DUI) ARREST REPORT" which noted, in part, that appellant had five previous DUI arrests.

At trial, defense counsel cross-examined Norman regarding appellant's admission and subsequent denial he was the driver. Norman testified appellant was interviewed and the arrest report reflected appellant's denial he was driving. Defense counsel moved the arrest report into evidence (exhibit K) without redacting the information pertaining to appellant's prior DUI arrests. During closing arguments, defense counsel briefly mentioned exhibit K and invited the jury to review it.

After deliberations started, the jury sent a note to the judge asking if they could use exhibit K as evidence regarding the five previous DUI's. The trial court met with counsel, agreed to a response, and informed the jury that it could not do so.

## B.     Standard of review.

A defendant bears the burden of proving ineffective assistance of counsel. (*People v. Ledesma* (1987) 43 Cal.3d 171, 216 (*Ledesma*).) To reverse a judgment, defense counsel's performance must be shown to be both deficient and have caused prejudice. (*Ibid.*) To show deficiency of performance, the defendant must establish that his counsel's representation was below an objective standard of reasonableness under the prevailing professional norms. (*Ibid.*)

To establish prejudice, the defendant must show there is a reasonable probability the result of the proceeding would have been different but for defense counsel's unprofessional conduct. (*Ledesma, supra,* 43 Cal.3d at pp. 217-218.) A "reasonable probability" exists when confidence is undermined regarding the trial's outcome. (*Id.* at p. 218.) The question on appeal is whether it is reasonably probable the factfinder would have had reasonable doubt respecting guilt if defense counsel's errors did not occur. (*Ibid.*)

Our Supreme Court has stated that when a claim of ineffectiveness may be rejected due to lack of prejudice, that course should be followed. (*In re Scott* (2003) 29 Cal.4th 783, 825; *In re Cox* (2003) 30 Cal.4th 974, 1019.)

19.

## C. Analysis.

Appellant maintains his trial counsel failed to act in the manner expected of a reasonably competent attorney because he exposed the jury to information about appellant's five previous DUI arrests. He asserts there was no reasonable trial tactic to introduce exhibit K into evidence unredacted. He also notes exhibit K was unnecessary based on Norman's trial testimony.

Respondent focuses on prejudice and contends appellant cannot establish that a result more favorable would have resulted if exhibit K had been redacted.

We agree that appellant cannot establish prejudice based on this record. Because appellant's claim of ineffectiveness may be rejected due to lack of prejudice, we will follow that course. (*In re Scott, supra,* 29 Cal.4th at p. 825; *In re Cox, supra,* 30 Cal.4th at p. 1019.)

Here, appellant voluntarily admitted to a police officer he was the driver. Appellant made his admission without prompting and he appeared nonchalant. After he was arrested, appellant's demeanor changed and he became very agitated, upset, and then denied being the driver. In addition to appellant's admission, an uninterested eyewitness identified him as the person who exited the BMW from the driver's seat. Appellant's mother also identified appellant as the driver. His mother's statement came after she initially claimed to be the driver, but she was warned about the consequences of lying to an officer during an investigation. Although the defense witnesses testified they saw appellant leave the party as a passenger, the evidence overwhelming established appellant was driving when the accident occurred.

Appellant has not shown there is a reasonable probability the result of his trial would have been different had his defense counsel redacted exhibit K. (*Ledesma, supra,* 43 Cal.3d at pp. 217-218.) Our confidence in the outcome of this trial is not undermined because a reasonable probability does not exist the jury would have had reasonable doubt

20.

respecting appellant's guilt absent this error. (*Ibid.*) Accordingly, appellant is not entitled to reversal.

## IV. Appellant Cannot Establish Cumulative Prejudice.

Appellant alleges he suffered a due process violation from "cumulative prejudice" stemming from the errors discussed above. This contention is without merit because we have rejected all of his claims or found no prejudice. Accordingly, reversal is not warranted. (*People v. Bradford* (1997) 14 Cal.4th 1005, 1057 [the defendant's cumulative prejudice argument rejected based on findings each individual contention lacked merit or did not result in prejudice].)

## V. The Amended Abstract Of Judgment Contains A Clerical Mistake.

In companion case No. VCF258951, the trial court terminated probation and imposed a two-year prison sentence to run concurrent with companion case No. VCF245876. The original abstract of judgment reflected that sentence. However, on August 12, 2014, the trial court filed an amended abstract that reflected a three-year sentence in case No. VCF258951.

An abstract of judgment must reflect the oral judgment of the sentencing court. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185-186.) An abstract may not add to or modify the trial court's judgment. (*Id.* at p. 185.) An appellate court has inherent power to correct clerical errors appearing in its records to make those records reflect the true facts. (*Ibid.*)

Here, the amended abstract of judgment does not reflect the oral sentence imposed by the trial court. Accordingly, we order its correction to reflect the two-year prison sentence orally imposed in case No. VCF258951.

## DISPOSITION

The amended abstract of judgment is ordered corrected to reflect the two-year prison term sentence imposed in Tulare County Superior Court case No. VCF258951.

21.

The court shall then forward the corrected amended abstract to the appropriate authorities.  The judgment is otherwise affirmed.